1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JORGE MENDOZA, | ) Case No. CV 19-9741-FMO (JPR) |
| | ) |
| Plaintiff, | ) REPORT AND RECOMMENDATION OF U.S. |
| | ) MAGISTRATE JUDGE |
| v. | ) |
| | ) |
| UBER TECHNOLOGIES INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

This Report and Recommendation is submitted to the Honorable Fernando M. Olguin, U.S. District Judge, under 28 U.S.C. § 636 and General Order 05-07 of the U.S. District Court for the Central District of California.

**PROCEEDINGS**

On November 13, 2019, Plaintiff filed a civil-rights Complaint alleging due process violations under the 14th Amendment, citing 42 U.S.C. § 1983, and unfair business practices under California law. (Compl. at 1, 3-7, 16-19.) His claims arise from Defendant's termination of his Uber driver account, allegedly without notice, a hearing, or any investigation, based on a rider's complaint that he was intoxicated. (Id. at 2-3.)

Defendant moved to compel arbitration and for a stay on

1

December 27, 2019.  Plaintiff opposed the motion on January 17, 2020, and Defendant filed a Reply on February 3.

For the reasons discussed below, the undersigned recommends that the District Judge grant Defendant's motion and stay this action pending arbitration.

BACKGROUND

Uber offers a smart-phone application for drivers to connect with riders looking for transportation.  (Mot., Rosenthal Decl. ¶ 3.)  Drivers must create an account with a unique username and password to use Uber's services.  (Id. ¶ 6.)  To access requests from prospective riders on the Uber app, drivers must first electronically accept a service agreement with an Uber subsidiary, such as Rasier, LLC.  (Id. ¶ 5; Mot., Fishman Decl. ¶ 4.)  After creating an account, a driver is required to select, "YES, I AGREE" to the service agreement, confirming that he has reviewed and agrees to its terms.  (Rosenthal Decl. ¶ 7 & Exs. A, B.)  Upon clicking "YES, I AGREE" once, he must confirm acceptance a second time by clicking it again.[1]  (Id. ¶ 8 & Exs. C, D.)

Plaintiff signed up to use the Uber app as a driver. (Compl. ¶ 6; Rosenthal Decl. ¶ 5.)  He accepted Rasier's November 10, 2014 online service agreement on December 4, 2014, and its December 11, 2015 technology-services agreement on December 11, 2015.  (Fishman Decl. ¶ 5 & Exs. A, B.)

---

[1] These features distinguish the service agreement here, and its arbitration provision, from the one at issue in Wilson v. Huuuge, Inc., 944 F.3d 1212, 1221 (9th Cir. 2019), in which the court refused to compel arbitration because a user of the Huuuge app never had to "affirmatively assent" to any terms of use.

2

The December 2015 agreement contained an arbitration provision prominently highlighted on the first page, stating in relevant part:

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDGING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUDING THE ARBITRATION PROVISION) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION.  IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE ARBITRATION PROVISION BELOW.**

(Id., Ex. B at 1 (emphasis in original).)  Plaintiff didn't opt out of the arbitration provision (id. ¶ 6) and does not contend otherwise.[2]

Section 15.3 states in large print:

> IMPORTANT: This Arbitration Provision will require you to
> resolve any claim that you may have against the Company

---

[2] The November 2014 agreement included a similar provision (Fishman Decl., Ex. A at 1), as to which Plaintiff also didn't opt out (id. ¶ 6).

3

or Uber on an individual basis, except as provided below,
pursuant to the terms of the Agreement unless you choose
to opt out of the Arbitration Provision.

(Id., Ex. B at 16.)  Under a subheading "How This Arbitration
Provision Applies," section 15.3 requires a driver to arbitrate
disputes, stating as follows:

> **[T]his Arbitration Provision is intended to apply to the
> resolution of disputes that otherwise would be resolved
> in a court of law or before any forum other than
> arbitration, with the exception of proceedings that must
> be exhausted under applicable law before pursuing a claim
> in a court of law or in any forum other than arbitration.
> Except as it otherwise provides, this Arbitration
> Provision requires all such disputes to be resolved only
> by an arbitrator through final and binding arbitration on
> an individual basis only and not by way of court or jury
> trial . . . .**

(Id. at 18 (emphasis in original).)  Two paragraphs later, the
section states that it applies to any dispute concerning
"termination," civil-rights claims, or "state statutes, if any,
addressing the same or similar subject matters, and all other
similar federal and state statutory and common law claims."
(Id.)  The agreement also provides, in a so-called "delegation
clause," Grice v. Uber Techs., Inc., No. CV 18-2995 PSG (GJSx),
2020 WL 497487, at *5 (C.D. Cal. Jan. 7, 2020), that "[a]ll such
matters" as the "interpretation or application" of the
arbitration provision, "including the enforceability,
revocability, or validity" of it, are to be "decided by an

4

1    Arbitrator." (Fishman Decl., Ex. B at 18.)

2                            **DISCUSSION**

3         Plaintiff contends that he is exempt from the Federal

4    Arbitration Act, and thus Defendant's arbitration provision,

5    because he is a "transportation worker" engaged in "interstate

6    commerce." (Opp'n at 2-4.) He argues that dropping off or

7    picking up passengers at Los Angeles International Airport, which

8    he did, constitutes interstate commerce. (<u>Id.</u> at 3.)

9    **I.    <u>Applicable Law</u>**

10        Congress enacted the Federal Arbitration Act in 1925 in

11   response to hostility from courts to the enforcement of

12   arbitration agreements. <u>Circuit City Stores, Inc. v. Adams</u>, 532

13   U.S. 105, 111 (2001); <u>see also</u> <u>AT&T Mobility LLC v. Concepcion</u>,

14   563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is

15   to 'ensur[e] that private arbitration agreements are enforced

16   according to their terms.'" (citation omitted and alteration in

17   original)). The FAA compels judicial enforcement of a wide range

18   of written arbitration agreements. <u>Circuit City</u>, 532 U.S. at

19   111. It extends to all contracts "evidencing a transaction

20   involving commerce," 9 U.S.C. § 2, but exempts "contracts of

21   employment of seamen, railroad employees, or any other class of

22   workers engaged in foreign or interstate commerce," <u>id.</u> § 1.

23        Section 4 of the FAA allows "[a] party aggrieved by the

24   alleged failure, neglect, or refusal of another to arbitrate

25   under a written agreement for arbitration [to] petition any

26   United States district court . . . for an order directing that

27   such arbitration proceed in the manner provided for in such

28   agreement." "Because the FAA mandates that 'district courts

                                5

1  shall direct the parties to proceed to arbitration on issues as
2  to which an arbitration agreement has been signed,'" courts must
3  determine "(1) whether a valid agreement to arbitrate exists, and
4  if it does, (2) whether the agreement encompasses the dispute at
5  issue." Grice, 2020 WL 497487, at *4 (quoting Cox v. Ocean View
6  Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in
7  original)).

8       To decide whether a valid arbitration agreement exists, a
9  court applies "ordinary state-law principles that govern the
10 formation of contracts." First Options of Chi., Inc. v. Kaplan,
11 514 U.S. 938, 944 (1995). In California, "[e]very contract
12 requires mutual assent or consent, . . . and ordinarily one who
13 signs an instrument which on its face is a contract is deemed to
14 assent to all its terms." Marin Storage & Trucking, Inc. v.
15 Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049
16 (2001) (citations omitted).

17      Doubts about the scope of arbitration must be resolved in
18 favor of it. Grice, 2020 WL 497487, at *4 (citing Moses H. Cone
19 Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).
20 When an arbitration agreement exists, the FAA requires courts to
21 compel arbitration "in accordance with the terms of the
22 agreement." 9 U.S.C. § 4; see also Concepcion, 563 U.S. at 344.
23 **II.  Analysis**

24      Plaintiff does not dispute that he assented to the December
25 2015 service agreement, including the arbitration provision. He
26 claims only that the provision does not apply to him because he
27 was engaged in interstate commerce, citing § 1 of the FAA.

28      A court must "decide for itself" whether § 1's exemption

1   applies before ordering arbitration.  <u>New Prime Inc. v. Oliveira</u>,

2   139 S. Ct. 532, 537 (2019).  This is true even when the contract

3   at issue contains a delegation clause, giving an arbitrator

4   authority to decide whether the parties' particular dispute is

5   subject to arbitration.  <u>Grice</u>, 2020 WL 497487, at *5 (citing <u>New</u>

6   <u>Prime</u>, 139 S. Ct. at 537).  A plaintiff has the burden of proving

7   the exemption applies.  <u>Id.</u>

8        Plaintiff contends he was engaged in interstate commerce

9   because he "dropped off or picked up many passengers at Los

10  Angeles International Airport in the State of California several

11  times."  (Opp'n at 3.)  For the § 1 exemption to apply, he must

12  demonstrate that his contract with Uber was a "contract of

13  employment" and, because he is not a "seaman" or "railroad

14  worker," that he falls within § 1's residual clause: "any other

15  class of workers engaged in foreign or interstate commerce."

16  <u>See</u> <u>Grice</u>, 2020 WL 497487, at *5.  If he cannot show both,

17  arbitration should be compelled.  <u>See</u> <u>id.</u> at *9.

18       Because the § 1 exemption is narrow, it exempts from the FAA

19  "only 'contracts of employment of transportation workers.'"  <u>Id.</u>

20  at *5 (quoting <u>Circuit City</u>, 532 U.S. at 119).  Transportation

21  workers include those "actually engaged in the movement of goods

22  in interstate commerce."  <u>Circuit City</u>, 532 U.S. at 112 (citation

23  omitted) (surveying court-of-appeal decisions).  <u>But see</u> <u>Singh v.</u>

24  <u>Uber Techs. Inc.</u>, 939 F.3d 210, 221-26 (3d Cir. 2019) (reviewing

25  cases and rejecting transport-of-goods requirement).  The most

26  obvious such example is someone who directly transports goods

27  interstate by, for instance, delivering packages from one state

28  to another.  <u>Veliz v. Cintas Corp.</u>, No. C 03-1180 SBA., 2004 WL

1  2452851, at *3 (N.D. Cal. Apr. 5, 2004), <u>modified on recons.</u>
2  <u>by</u> 2005 WL 1048699 (N.D. Cal. May 4, 2005).

3       By his own admission, Plaintiff did not cross state lines.
4  (<u>See</u> Opp'n, Mendoza Decl., Ex. A.)  His average trip distance was
5  6.4 miles, with a duration of 18.14 minutes.  (Reply, Contreras
6  Decl. ¶ 6.)  Wholly intrastate transportation offered by taxi
7  companies is purely local activity, even when that transportation
8  is part of a broader, interstate journey.  <u>See</u> <u>United States v.</u>
9  <u>Yellow Cab Co.</u>, 332 U.S. 218, 230-32 (1947) (using taxicabs for
10 transport to railroad stations was too tangential to interstate
11 commerce to fall within Sherman Act), <u>overruled on other grounds</u>
12 <u>by</u> <u>Copperweld Corp. v. Independence Tube Corp.</u>, 467 U.S. 752
13 (1984).  More recently, numerous courts have found that rides to
14 and from the airport do not constitute interstate commerce,
15 particularly when no goods are involved.  <u>See, e.g.</u>, <u>Grice</u>, 2020
16 WL 497487, at *8 (finding persuasive cases holding that drivers
17 who transport people locally do not fall within § 1 exemption);
18 <u>Scaccia v. Uber Techs., Inc.</u>, No. 3:18-cv-00418, 2019 WL 2476811,
19 at *4 (S.D. Ohio June 13, 2019) (former Uber driver not in class
20 of workers engaged in interstate commerce even though he
21 transported passengers across state lines because no transport of
22 goods), <u>accepted by</u> 2019 WL 4674333 (S.D. Ohio Sept. 25, 2019),
23 <u>appeal filed</u>, No. 19-4062 (6th Cir. 2019); <u>Gray v. Uber, Inc.</u>,
24 No. 8:18-cv-3093-T-30SPF, 2019 WL 1785094, at *2 (M.D. Fla. Apr.
25 10, 2019) (denying recons.) ("Plaintiff did not argue or
26 demonstrate that his position with Uber required him to transport
27 goods in interstate commerce."), <u>appeal dismissed</u>, No. 19-11576-
28 F, 2019 WL 3408912 (11th Cir. June 18, 2019).

1  Because Plaintiff's work as an Uber driver did not involve

2  crossing state lines or transporting goods, he does not fit

3  within the § 1 exemption for a transportation worker who is

4  "engaged in . . . interstate commerce." <u>Cf.</u> <u>Singh</u>, 939 F.3d at

5  226 (remanding for determination of whether Uber driver engaged

6  in interstate commerce when his submissions showed that he

7  "frequently transported passengers on highway across state

8  lines").[3]  Thus, his resistance to arbitration fails regardless

9  of whether his agreement with Uber was a "contract of

10  employment." <u>See</u> <u>Grice</u>, 2020 WL 497487, at *9.  And because the

11  arbitration provision here contains a delegation clause, which

12  Plaintiff has not specifically challenged, it is up to the

13  arbitrator to decide whether his particular dispute falls within

14  the scope of the provision. <u>Rent-A-Center, West, Inc. v.</u>

15  <u>Jackson</u>, 561 U.S. 63, 72-73 (2010).

16

17

18

19

20

21

22

23  [3] Similarly, <u>Uber Techs., Inc. v. Patel</u>, No. CPF-17-515894
(S.F. Super. Ct. Nov. 26, 2019), cited by Plaintiff (Opp'n at 3)

24  and discussed in a recent news article, <u>see</u> Joel Rosenblatt, <u>Uber</u>
<u>Drivers Who Make Airport Runs Get a Boost in Pay Fight</u>, Bloomberg

25  Law, Daily Labor Report, Nov. 26, 2019, does not support
Plaintiff's position. There, the court simply granted a discovery

26  request "to develop facts relevant to the extent to which Uber
drivers engage in interstate commerce"; it did not decide the

27  issue. Order Granting Labor Comm'r's Disc. Req., <u>Patel</u>, No. CPF-
17-515894.

28

9

1  **RECOMMENDATION**

2      It therefore is recommended that the District Judge accept

3  this Report and Recommendation, grant Defendant's Motion to

4  Compel Arbitration and Stay Action, and order the case stayed

5  pending arbitration.

6  DATED: March 25,2020

7  JEAN ROSENBLUTH
   U.S. MAGISTRATE JUDGE

10